The next matter on our calendar is United States of America v. Leonard Wolfe. Good morning, Your Honors, Matt Larson of the Federal Defender's Office for Mr. Wolfe. Your Honors, Mr. Wolfe raised significant questions concerning the voluntariness of his guilty plea. He alleged that the plea was the product of threats and promises. By his lawyers. By his lawyers, that's right, Your Honor. And under the standard that this Court has set up for getting a hearing, Mr. Wolfe made the showing necessary to get a hearing. There's basically three prongs. First, the allegations of threats and promises were not simply conclusory, but rather they were detailed as set out in Mr. Wolfe's affidavit. The time, the place, the who, what, where, and when of where the coercion and the promises were made. They were not inherently incredible. The judge herself, when she received these allegations, scheduled a hearing, ordered the lawyers to submit affidavits and appear for cross-examination. And finally, the allegations were not contradicted by the record. Mr. Wolfe alleged threats and promises, but critically, at the plea colloquy, the judge omitted to ask him whether his plea was the product of threats and promises. She didn't ask him whether he was pleading voluntarily. Indeed, she did, Your Honor. He said yes, and he didn't raise any question about that. I mean, he could have at that point said something, but he didn't. In terms of people having the opportunity to raise allegations, either at the plea or later, it's been made very clear that that's not a determinant factor. In Machabrota, in McGrath, and in Harrington, a more recent- It doesn't matter, though, if he waits. This was a six-month wait after the plea. Indeed, and in Machabrota and in McGrath, the delay was years, not months. And this Court and the Supreme Court said in those cases that on those facts, where there was an allegation, a detailed allegation of coercion, that was not flatly contradicted by the record, and it was not inherently impossible, perhaps implausible, but not on its face incredible and unbelievable, a hearing at least is warranted. Not necessarily withdrawal of the plea. That's not the relief we're seeking. All you're asking for is a very sort of narrow request for a hearing. Right. Unlike the perhaps more interesting case of this morning, this is a pretty narrow, straightforward case. We're seeking the relief that the judge initially was going to grant, but then withdrew, and she canceled the hearing based only on the affidavits. When she received the affidavits from the lawyers, they basically denied everything. They're like, we didn't do that. She said, okay, I believe you guys- She thought the affidavits answered all the questions she had. Excuse me? The affidavits simply denied Mr. Wolfe's allegations as to the promise and the coercion. And this Court has made very clear, and there are many cases cited in our briefs that make clear, when there's simply a flat denial, where there's a factual dispute that can't be resolved on the papers, we don't prefer one piece of paper to the other. We need a hearing. We need new counsel for Mr. Wolfe to independently cross-examine these lawyers so that the fact finder can make a credibility determination as to who is telling the truth. That kind of in-person hearing is what the law provides for in this kind of situation. Let's assume there was a hearing, and then your client prevailed at the hearing. How would he be advantaged in this case, possibly be advantaged by going to trial? As this Court has also recognized, and the Supreme Court has recognized, the question whether to go to trial is absolutely committed to the defendant. He may not always make the most strategically sound decision, but the right is— There's some role in this. Here's a situation where there was a trial for two days, and massive amounts of evidence, as Judge Wood found, was overwhelming against him that came in. And he got a sentence of 135 months, which is way below what the judge could have sentenced him to. And he wants to now go back, and he's not going to get out on bail, probably. And then he'll be retried again. And his plea of guilty, presumably, will be admitted against him at one point, because the question there would be whether or not I would think that the plea of guilty could be used against him. I would think— His statement's in the allocution, anyway. If he were to prevail at the hearing, and the plea is deemed to have been the product of coercion, then it most certainly would not be admissible against him, because— No, the plea wouldn't be. But his statements in the allocution, personal statements, which were made at the time of the plea, could be admitted. I will defer to Your Honor. I think that'd have to be a case-to-case situation to litigate down the road. Leaving that aside, there was very strong evidence here that was heard by Judge Wood before the plea. And I don't know if Botwinick testified, but these other lone—the other people testified. And the testimony, the case seems pretty clear here, based upon what she found already. And I just wonder whether, you know, this is—I mean, he may have a right to try and press a withdrawal claim, but I just don't know whether it's really in his interest. Have you explained to him that it might not be in his interest? I may, in fact, agree with Your Honor. I can't reveal anything I've told my client, but the strategic soundness is not a legally relevant consideration in this context. I understand that. I'm talking about the practicalities of the situation. You know, we get situations that arise in various contexts. And, you know, maybe there's a defect in the plea, and then there's an Anders brief that's filed, and then the question comes up is whether or not it would be a sound thing for this person to press the plea, even though there may be a non-frivolous issue. And that's a question that's discussed at that time. And it may not be the best strategy, but Mr. Wolf has satisfied the requirements for at least a hearing on whether his plea was properly— Would you agree that Judge Wood had the discretion not to hold or have a hearing, at least in part because the declaration filed by Mr. Wolf doesn't say he's innocent, doesn't purport to say he's innocent? It talks about a conversation with his lawyers at the Moynihan Courthouse. No, Your Honor. As we explain in our briefs, in this kind of a context, innocence is not relevant because the innocent, just like the guilty— Purely about coercion, the coercive nature of the plea. The innocent and the guilty alike both have the right not to be coerced into pleading guilty. So I'm guilty, but I was coerced into pleading guilty. And that's clear in Machibrota and McGrath, where, you know, the defendant, I believe it was in one or the other. I don't want to misspeak. It was one or the other. No, no, no. McGrath, where he testified— And here's my hypothetical. Yeah. And maybe this is McGrath, but so if the declaration said, I am completely guilty, but I was misinformed by my attorneys about the consequences of the plea, of pleading guilty. That could support at least a hearing. Now, innocence is not, I'm saying, irrelevant. Innocence may well be relevant in cases where the principal claim is I'm innocent and I made a mistake in pleading guilty. In those kinds of cases, innocence is absolutely relevant. In this case, the thrust of our argument is coercion, not innocence. And the innocent, just like the guilty, have the right not to be coerced. Wasn't Judge Wood within her right to, on the papers, given the fact that there had been a hearing, in one sense, that there was two days of a trial in which she heard extensive evidence about the defendant's lack of credibility and the fact that he had perpetrated lie after lie in connection with this fraud, to take that into account and discredit his representations in connection with the motion to withdraw? Not by itself, Your Honor. In the first circuit case we cite by then-Judge Breyer, he says reputation for truth is not a substitute for cross-examination for a hearing. In a hearing context, we'll have a lawyer— Representation for truth? Reputation, excuse me. He's not hearing from somebody else what the person's reputation is as a liar. She sat there and saw that he was put to lie after lie after lie by witnesses, witnesses who he never spoke to, he was claiming he had spoken to and was using to tout his activities of one sort or another, the false loans, whatever. The evidence was there was extensive proof on that score. And wasn't she within her right to take that into account? Take it into— And to say, this is a waste of time because I know he's a liar and there's no way he's going to be able to resuscitate it. She didn't know, Your Honor, that he was lying about the allegations as to what happened at that lunch meeting. She was not in the lunchroom when this conversation was had. She was not present for that. Now, clearly she has a feeling as to Mr. Wolf's credibility generally, but that itself— Just as a follow-up to that question and the answer, what the incentive would be for these lawyers to convince or persuade or to lie, frankly, to Mr. Wolf and tell him he should plead guilty right in the middle of the trial? This is actually something I didn't get into in detail because I didn't think I had to, but I'll certainly address it to answer Your Honor's question. That's something Judge Wood could have considered also. Yeah, if you look at the affidavits from the lawyers, one of the lawyers, Mr. Buckley, has known Mr. Wolf for 25 years. In his affidavit, it's clear that there's a lot of personal animosity between them. In fact, they had initially been Mr. Wolf's lawyers in this case when he was indicted in Florida. They were then put off the case and then came back onto the case. There's a lot of animosity between them. There's also conflicting allegations as to when and why Mr. Wolf decided to plead guilty. They both say he was always against the idea of pleading guilty. Then Mr. Cohen says, I heard from Mr. Buckley that he changed his mind and wants now to plead guilty. Mr. Buckley doesn't talk about that at all. These are things that can be sussed out at a hearing, but to answer Your Honor's question, Mr. Wolf alleged they did not thoroughly prepare for the trial. They didn't hire the investigator that I asked them to. They weren't ready to put on a defense. So, plausibly, that is a reason why they said, Look, there's a lot of evidence against you. We aren't really prepared to try this properly. In fact, Mr. Buckley is not a criminal practitioner. Plausibly, then, they said, Look, we have no defense. It's better. You need to plead. We need to get rid of this case. And they said what Mr. Wolf alleged they said. These are questions to be sussed out at a hearing. One of the things that she says that Buckley told her was that she was going to get 30 years from the judge after Madoff and that she had imposed the maximum sentence on every fraud defendant convicted at trial. That's capable of being proven demonstrably false. And you're suggesting that this is something that Buckley would have said. I mean, the whole thing is fantastic to me. And speaking of fantastic, Your Honor, I will refer the court to the McGrath case. The allegation there was that the judge, in chambers, brought in the defendant, told him to plead guilty and then instructed him to lie in court when the judge asked him, Has anyone made any promises to you? On those facts, this court said, The person's entitled to a hearing. No matter how unbelievable... The same judge before the very same judge? Oh, I would think not. And certainly in this case, and the government hasn't really contested this, that to preserve the appearance of justice, we would have to have reassignment if we get a hearing. And I think Mr. Wolf has shown his entitlement to a hearing. They may be unbelievable on their face, but McGrath and Machabrota, again, Machabrota was an allegation. The prosecutor came in ex parte and said, I'm speaking on behalf of the judge. We promise you no more than 20 years if you plead guilty. He pled guilty. He gets 40 years. Years later, he moves to withdraw his plea. The Supreme Court says, You get a hearing. All we're asking for is a hearing, Your Honors, and we're entitled to it under the law. Thank you. We'll hear from the government. May it please the Court, my name is Jonathan Cohen. I represent the United States in this appeal, and I represented the United States at trial as well. Your Honors, Judge Wood did not abuse her discretion in denying an evidentiary hearing here. She was entitled to reject Wolf's allegations because they are flatly contradicted by, first and foremost, his own words in open court. And I'm talking about the Lafler-Frey allocutions on the first day of trial as well as his plea allocation on the third day of trial. Those two things together with what Judge Walker has addressed earlier. Did you mention about the first day of trial? The Lafler and Frey allocutions on the two plea offers that the government had extended to the defendant and that the defendant rejected. Mr. Wolf confirmed that those plea offers had been extended, and he confirmed that they had been rejected. And it's highly relevant here because he alleges that the plea offers were not communicated, and that's at paragraph 22 of his declaration. So he claims more than six months after trial that the plea offers were not communicated. When he was before Judge Wood, he said something entirely different. So that's one example, Your Honors. As well, he claims that counsel was ineffective, and this is another one of his allegations, and I'm taking those from both his February 2015 letter and his June 2015 declaration. He claims counsel was ineffective. That's paragraph 1 of his declaration and elsewhere. This is also contradicted by Wolf's own prior statements, and it's contradicted in two ways. First, at his plea allocution under oath, he confirmed, and this is at A46 of the appendix, that he had an adequate opportunity to discuss his case with his lawyer and that he was satisfied with his lawyer and his lawyer's representation of him. It's also contradicted by his February 2015 letter well after trial where Wolf wrote, and this is at A97, Buckley, despite having been relieved, continued to advise and effectively represent this defendant throughout the duration of this case. So this is a second place where... If he was being coerced at the very time that he allocated to these things, wouldn't we take that into account in judging the reliability of the statements? He claims that's exactly when he was being coerced. It is. Well, Your Honor, to be precise, the Lafler and plea allocutions were on the first day of trial, the morning of trial, before he's claiming there was coercion. I believe he claims that the coercion was during lunch on the second day of trial or at least the heart of the statements. But certainly, Your Honor, as to the February 2015 letter, this is well after trial. Mr. Wolf's had plenty of time to think about things and decide what he's going to say in these pleadings, and he says that Buckley is effective in that. He also says other things about Buckley, but he should be held to that statement, and it's inconsistent with not only that. His statement about Buckley being ineffective is inconsistent with his February declaration, and it's inconsistent with what he told Judge Wood when she was trying to determine whether he was effectively represented, whether he had any problems about his representation. He said nothing whatsoever. Mr. Larson points to a 1963 decision, McGrath, that seems to suggest that there should be a hearing or a hearing should have been conducted, notwithstanding these inconsistencies. What's your response to that? I think, Your Honor, first, in McGrath,  of the defendant's affidavit, and we have the opposite situation. We don't have the attorney swearing to the accuracy of the defendant's allegation. We have three separate attorneys in detailed affidavits that contest completely what he said. So I would say that that's a first response. Also in McGrath, I believe from the record, the plea was on the first day of trial before any evidence. So the judge in McGrath did not have two days of testimony, much of which went directly to the defendant's credibility. I also think that the circuit, that this court allows district courts the middle road of deciding on detailed submissions, which is what we have here, without requiring an appearance at a full-blown hearing. And we believe that Judge Wood did that here. She had not only the three affidavits. She had statements from Wolf on the Monday of trial and the Wednesday of trial, and she had testimony from six witnesses. And during one of those witnesses on the stand, Mr. Botwinick, during his testimony, we played detailed audio recordings of the defendant in the middle of a fraud, defrauding Mr. Botwinick out of $10 million. So that's hard evidence of the defendant's own voice there. Mr. Bressler was . . . Mr. Wolf's . . . As Mr. Larson said, he could have put down in his declaration, I'm guilty, but I was coerced into pleading guilty, and I want a hearing about the coercion. So it's a very narrow issue, and I think the question then is, under what circumstances must a district court conduct a hearing? And it can't be the fact that it's just the overwhelming nature of the evidence presented at trial. Your Honor, I would disagree with Mr. Larson in that First of all, in his February 2015 letter, he does assert actual innocence. He does it in two places in that letter. Second of all, under this Court's case in Doe, there's three factors that a district court considers. One is the length of time between the plea and the motion to withdraw. The second is whether the defendant has claimed innocence, and counsel in the district court did argue innocence on the same very case. And so the innocence is very . . . that claim of innocence is relevant here, both because of that three-factor analysis . . . Is it a precondition or is it part of the balancing? I believe it's factors to be considered, Your Honor. Okay. And aside from the . . . Aside from those contradictions, Your Honor, also his claim of confusion . . . And I am right now restricting myself to his own words. And in this case, his own words under oath. The judge asked him if he was . . . The judge asked him, is your mind clear right now?  Yes, ma'am, and that's at A44. She asked him, as Judge Walker indicated earlier, she confirmed that he was pleading guilty voluntarily. She also confirmed that he was pleading guilty of his own free will, and that he was pleading guilty because he was in fact guilty. And there's a whole other set of questions she asked during that plea allocation to ensure that the plea was voluntary. She asked him whether his mind was clear. He confirmed that. Whether he wasn't under influence of drugs or alcohol. That he was satisfied with his representation. That he could change his mind right then and refuse to enter a plea of guilty. And he confirmed that he knew that. That he did not have to enter the guilty plea if for any reason he didn't want to. And he confirmed that that was the case. He didn't say, I'm being coerced. As we discussed earlier, if he was being coerced, and he certainly was by this time, if you take his affidavit by what he said, then anything he said would have been attributable to the coercion. I think, Your Honor, yes, if you assume that he would be less truthful with a judge or not allow any feelings he was having to be overcome by him being put under oath and speaking to an officer of the court on the bench. I think there's a lot of people who, even with some degree of coercion or a lot of degree of coercion, would be honest with the court. Your Honors, that's all I have. Thank you. I have no further questions. Thank you, Counsel. Mr. Lawson, you've reserved two minutes for rebuttal. Thank you, Your Honors. Judge Loya, you asked under what circumstances must a court conduct a hearing. This court set out the rule that applies here in the McGrath case, where a defendant alleges that a guilty plea is the product of deceit, promise, or threat, and facts are specifically set forth which support that allegation and which create issues inescapable of resolution by a simple examination of the files and records, the court must grant a hearing. And that's in the McGrath case, and it's quoted in our briefs. Mr. Wolfe has met that standard here. The three factors that Mr. Cohn was talking about are the three factors for withdrawing a guilty plea, but this court made clear in Gonzales that the standard for getting a hearing is much less than that. An individual has to show there are significant questions about the validity of a plea, and we've shown significant questions here. We've raised these questions. We've alleged coercion, and we've alleged promises forced the plea. Now, these are not absurd on their face. If they were, the judge would have laughed him out of court. She wouldn't have scheduled the hearing. She wouldn't have ordered the lawyers to respond. They were not contradicted by the record because, again, there was an omission, and in the Johnson case from March of this year, this court reaffirmed, we strictly adhere to Rule 11, and when there's an omission of a certain question in the Rule 11 colic, we look very closely. And he asked, are you pleading voluntarily? He said, yes. We've explained in our briefs why that makes sense given the information that he alleges he was given. He's like, look, your choice is plead or go to jail for the rest of your life. Under that choice, he voluntarily chose what he thought was the better option, but he wasn't asked specifically did this result from promises or threats. And the First Circuit case that we cite in our brief, which, again, the government simply ignores, as it does all of our authorities, the First Circuit case supports us on this point as well. Moreover, even if Mr. Wolf had denied any coercion, even if he had been asked that question, were you promised things, were you threatened, and said no, that would not preclude a hearing. And that's because in McGrath and in Davis, a 2001 case from this court, also in our briefs, the defendants there did just that. They said at the plea, I wasn't promised anything, I wasn't threatened. They then came back, alleged coercion, alleged an improper plea, and they got a hearing. And the court said that they were entitled to a hearing. And that's all we're asking for here, Your Honors, a hearing which the law entitles Mr. Wolf to. Thank you. Thank you both. We'll reserve decision.